Bkockenbeotjgh, J.
Without going into the inquiry, whether or no the plaintiff Garden might have defended himself at law, on the ground on which he sought relief in equity, I am of opinion, that, upon the proofs in the cause, he has no right whatever to equitable relief, and that the decree should be reversed, and the bill dismissed.
Cake, J.
Upon the facts relied on by Garden in his bill, he had a perfect legal defence against the bond executed by him to Haden. For, surely, if he meant to execute it to Scott; if a bond drawn payable to Scott was read to him as that which he was to execute, and, at the moment of execution, a bond to Haden was substituted for it, and executed by him without knowing the change; a plea of non est factum might have been *161 supported. No excuse has been stated, for the failure • to make the defence at law. If it be said, that the courts of law and equity have concurrent jurisdiction in such matters of fraud, that is true; but it is equally true, that in all such cases, the court which first gets possession of the cause, will make an end of it; and any defence which a party according to the rules of that tribunal can make, must be made there. This is a settled rule; and I apply it the more willingly to this case, because I think the facts of the case, and the situation of the parties, present grounds for suspicion of combination and collusion between these brothers in law.
Cabell, J.
I am of opinion, that the decree ought to be reversed, on the ground, that the plaintiff in equity might have defendecl himself at law, and has assigned no reason for his failure to do so.
Brooke, J. concurred.
Tucker, P.
I am of opinion, that the injunction awarded the plaintiff ought never to have been granted, that it should have been dissolved on the hearing, and that the bill should have been dismissed.
As little tenacious as I may seem to be on the subject of jurisdiction, yet I am decidedly of opinion, that where a party has a full, perfect and unembarrassed defence at law, of which he fails to avail himself, without even the pretence of an apology, he cannot be relieved in equity. Such was certainly Garden's case. If the statements in his bill, and in the depositions of his own witnesses are true, the instrument upon which he was sued was not his bond; and he might have pleaded the plea of non est factum with a safe conscience, and sustained it beyond contradiction. For, besides the fraud, which of itself avoided the deed at law, delivery, either to the obligee or to some one for him, was *162 essential to constitute the instrument a valid bond. But so far from being the case, is directly the reverse of the fact, as proved by the subscribing^ witness, and by Robert Scott himself. ' 1 think, therefore, he. had a full defence at law, and it would seem he was full handed with evidence.
Nor does the consideration that equity has concurrent jurisdiction, make any difference. The jurisdiction of equity to relieve against a fraud, is no excuse for the omission to make the defence, when the party is already before a court having full cognizance of it, in a case depending before that court. Garden was sued at law, and might there have had redress. Shall he, without even a pretext, multiply litigation by instituting this second suit in equity ? Shall he be permitted to shrink from the jury trial, which must have decided the case at law, and bring his adversary into equity, where he may escape, and actually has escaped, that ordeal ? I think not, and am therefore of opinion he was not entitled to any relief.
But if this objection be waived, then parties are before us upon their respective equities. In a comparison of these, I am of opinion that those of Haden must prevail. Garden or Haden must lose. On whom should the loss fall ? On him who has enabled Scott to deceive the other. Was neither Garden nor Haden to blame ? Was Scott the only perpetrator of the fraud? Then their equity is equal, and Haden must be left to the benefit of his judgment. Is Garden, however, censurable for laches and carelessness? Then it is most clear, that he must be the sufferer, as he has enabled Scott to cheat Haden; to compromise and discharge Haden’s just demands, by the delivery of a bond of Garden to him, carrying on its face every appearance of fairness, and unquestionably genuine as to signature. What are the circumstances ? Scott wished to pass Mrs. Garden's bond to Haden. This Haden declined to receive; but *163 he agreed to take Garden’s bond made payable to him- .. , , self, lor the same amount. Scott applied to Garden, got a new bond of Garden to Haden, delivered it to Haden, and discharged thereby his debt to him. The paper is genuine as to signature, and there is moreover a subscribing witness. What doubt could Haden have about its fairness ? What negligence or want of caution can be fairly imputed to him ? None whatever. Is it' so with Garden? Scott applied to him to give his own bond to him. Unless he either designed to fix Garden’s liability, whatever might be the event as to the land, or unless he wished to pass off the new bond to more advantage, I know not what motives he could have had; and if these were his motives, Garden cannot complain of being held liable. But, in truth, there is that in the transaction, which goes to shew, either that Garden knew the change was made for the purpose of passing off this bond to some third person, or that he ought to have been put upon his guard by the very nature of the proposition. Why was it, that the other bond of Mrs. Garden was not also changed ? That was kept in its original form, and left to Scott’s disposal, and it appears in proof, was in fact passed away by him. Why was this bond written by Scott, and brought to Garden to sign, instead of being written by Garden himself? There was enough to have prompted inquiry on the part of Garden, as to the bond in dispute, and as to Scott’s motives for desiring the change as to one bond only; yet Garden was satisfied with Scott’s explanation, which would have applied as well to the other bond as to this. I cannot think he has been duly cautious in this regard; nor can I readily acquit that man of a want of due care, who suffers such a trick to be played upon him, as is detailed in this cause. He must be content to sit down under the loss, rather than it should fall upon one who was altogether innocent.
*164 If instead of executing a new bond, the old one had been about to be assigned to Haden, and in reply to an inquiry as to its validity, Garden had signed a note written by Scott, acknowledging its validity, and promising payment, he would have been bound beyond question, I presume, by whatever legerdemain of Scott he might have been deceived into doing so. The case at bar is, if possible, stronger; for here the old bond is given up, .and a new one executed in which Haden is made the obligee. And this too is written by Scott, instead of by Garden himself, as was the natural course of things ; and he executes it, permitting Scott (as the story is) to cheat him by substituting for the paper he had read, -another which he had not read. All these things lead to the belief, that the new bond was executed for Scott’s accommodation, and excite strong doubts of the truth of the allegation, that Garden did not know what was to be done with the bond. But if this be not so, they shew, at least, a want of caution and prudence in Garden, which ought to place the loss upon him rather than upon Haden.
Decree reversed, and bill dismissed.